*1312 FERREN, Associate Judge,
concurring:
I concur in the opinion of the court, except for the final five paragraphs dealing with In re R.M.G., 454 A.2d 776 (D.C.1982), for I believe the three-step approach prescribed there is always required when race is at issue in an adoption contest. Accordingly, I would write the final portion of the opinion as follows:
Finally, appellants argue that the trial court abused its discretion in failing to consider the factor of race in accordance with the three-step approach articulated in R.M.G., 454 A.2d at 791-92. Because it does not appear that this three-step approach would have affected the result under the facts of this case, its omission from the trial court’s analysis provides no basis for reversal.
In R.M.G., the lead opinion stated:
When race is relevant in an adoption contest, the court must make a three-step evaluation: (1) how each family’s race is likely to affect the child’s development of a sense of identity, including racial identity; (2) how the families compare in this regard; and (3) how significant the racial differences between the families are when all the factors relevant to adoption are considered together.
454 A.2d at 791. Race is a statutory factor which the court may consider, when appropriate, D.C.Code § 16-305 (1981); R.M.G., 454 A.2d at 783-84, and it is “relevant,” in the sense used here, whenever there are racial differences between the child and one or more of the prospective adopting families.
In this case, not only race but, more broadly, S.A.O.’s cultural identity — Guyanese/Latino — is at issue. We need not consider how an R.M.G.-type analysis should have been applied here to this broader issue, where the racial and cultural backgrounds of the prospective adopting parents differ. We assume it is possible that a more scrutinizing analysis to some extent would have affected the trial court’s finding that D.I.S. and S.A. O.’s natural family are “better equipped as living examples ... to inject into the life of the adoptee the real sense of her Guyanese/Latino heritage and culture.” Nonetheless, however significant or insignificant “the racial [and cultural] differences between the families are when all factors relevant to adoption are considered together,” 454 A.2d at 791, it is clear that the court would still have granted D.I.S.’ petition.
This is not a case “where there is every indication from the trial court’s analysis that, but for consideration of race [and culture], the decision might have been different.” 454 A.2d at 794. The trial court’s decision was heavily influenced by the support group available to S.A.O. from the extended natural family, including her father, as well as by the turmoil in the foster family, including discriminatory treatment of S.A.O. by S.J.G.’s estranged husband. Furthermore, the court found D.I.S.’ family “equally well equipped, if not more so, from a financial basis.” Although the court also was influenced by D.I.S.’ ability to promote S.A.O.’s cultural background and heritage, it is clear that, even if S.J.G. ranked equally high on that factor (she obviously could not have ranked higher), the other factors would have led the court, on balance, to a conclusion that adoption by D.I.S. would be in S.A.O.’s best interest.